UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKEL AMERICAN
INSURANCE COMPANY,

    Plaintiff/Counter-Defendant,

                                            Case No. 10-11667

v.                                               Hon. Lawrence P. Zatkoff

LORN H. OLSEN,

    Defendant/Counter-Plaintiff.

                                                /

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 29, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

In this lawsuit, Plaintiff/Counter-Defendant Markel American Insurance Company ("Plaintiff") filed a declaratory judgment action in relation to an insurance policy it issued on a yacht owned by Defendant/Counter-Plaintiff Lorn H. Olsen ("Defendant"). In turn, Defendant filed a counter-complaint to recover under the policy. Currently before the Court are three motions, each of which has been fully briefed:

    1.    Defendant's Motion for Partial Summary Judgment (Docket #26);

    2.    Plaintiff's Motion to Strike Affidavit of Defendant Lorn H. Olsen (Docket #30); and

    3.    Plaintiff's Motion for Summary Judgment (Docket #31).

The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore,

pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, all three motions are DENIED.

## II. BACKGROUND

### A. The Sinking of the Camelot

Defendant was the owner of a 1982, 56-foot yacht ("Camelot") that he purchased in March 2006. As of August 2007, the Camelot was insured under a Helmsman Yacht Policy of Insurance, #YH5069549-62 (the "Policy"), issued by Plaintiff. For purposes of this lawsuit, the Policy, commonly referred to as a time hull coverage policy, was in effect from August 30, 2009 to August 30, 2010.

On or about October 24, 2009, Defendant and several passengers departed Hayes, Virginia, onboard the Camelot to travel to Ft. Lauderdale, Florida. They arrived and moored the vessel on November 3, 2009. According to Defendant, during that trip, the Camelot experienced no mechanical or equipment failures, no leaking, and no taking on of water other than that routinely expected of all water-bound vessels. During this journey, Defendant states that he performed the normal, routine and regular inspections that he would on any journey, including inspections of the bilge areas in the mechanical room where the raw water intake hose was located.

On November 4, 2009, Defendant left the Camelot docked in Florida. On November 7, 2009, Defendant received a telephone call advising him that the Camelot had begun taking on water late in the evening on November 6, 2009, and that by early morning November 7, 2009, the Camelot was completely submerged at its dock. The parties agree that the vessel sank in calm waters while tied to the dock.

**B.     Defendant's Claim on the Loss**

Defendant submitted a claim to Plaintiff for the loss of the Camelot in November 2009. Once it received the claim, Plaintiff retained a marine surveyor, Randal S. Roden ("Roden"), to investigate the cause of the sinking. Roden stated that the Camelot sank due to the ingress of water through a failed raw water intake hose that: (a) was soft and pliable, and (b) showed evidence of wear and tear and deterioration. Roden concluded that the raw water intake hose of the main engine was approximately 90% severed. Plaintiff then hired Robert Taylor ("Taylor"), a licensed professional engineer with expertise in naval architecture, marine and mechanical engineering, and failure analysis, to examine the raw water intake hose. Taylor opined that there had been a large change in hardness values of the hose (an indication of age and deterioration) and corrosion from chloride exposure, with the deterioration accelerated at the region of failure. Taylor concluded that "the hose failed due to long-term degradation, wear and tear, and corrosion."

In a letter dated December 1, 2009, Plaintiff denied Defendant's claim based on language in the Policy that excludes loss or damage caused by "[w]ear and tear, gradual deterioration . . ." and/or "[f]ailure to maintain the insured yacht (including its machinery and equipment) in good condition[.]" The letter stated, in part:

> The hose failed over time due to wear and tear and/or gradual deterioration. The condition of the hose is suggestive that it was original to the vessel and had not been replaced. The vessel sank in calm waters at the dock.
>
> Due to the above stated policy provisions, we cannot provide coverage for your claim as presented. . . .

Defendant states that the Camelot sank because a raw water intake hose had burst, thereby allowing water to flood the engine compartment. Defendant's position regarding the cause of

3

sinking is that: (1) the Camelot's bilge pump system properly engaged at that time in an effort to remove the water that was entering the engine compartment through the failed raw water intake hose, (2) this system continued to operate properly to keep the Camelot afloat until such time as the batteries that powered the bilge pumps were depleted, thus (3) resulting in the sinking of the vessel.

**C.     The Policy**

The Policy includes the following provision regarding "PROPERTY COVERAGE":

I. Coverage

    a. Hull Coverage (Including Tenders)

        i. Coverage

We shall pay for sudden accidental direct physical loss or damage to the insured yacht unless:

1) the property is described under Property Not Covered in item ii.; or

2) the cause of loss is described under Exclusions in item iii.

ii. Property Not Covered

Under Hull Coverage, we shall not pay for loss or damage to dock boxes, moorings, cradles, trailers, wearing apparel, cameras, fishing equipment, diving equipment, fuel, provisions, portable radios and other portable audio equipment, portable cellular telephones, water skis and other sporting equipment, or personal watercraft such as jet skis or wave runners.

This provision does not apply to marine electronics.

iii.  Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

We shall not pay for loss, damage or expense caused by or resulting from:

1) wear and tear, gradual deterioration, electrolysis, corrosion, rust, mold, rot, marring, denting, scratching, weathering, osmosis or blistering of fiberglass, resin or gelcoat or willful misconduct of an insured;

2) failure to maintain the insured yacht (including its machinery and equipment) in good condition so that the insured yacht can be damaged by ordinary weather or water conditions or the rigors of normal use; [or]

3) manufacturer's defects or design defects.

However, if the loss or damage has not resulted from the negligence of any insured, this exclusion does not apply to loss, damage or expense directly caused by explosion, bursting of boilers, breakage of shafts or any latent defect in the hull or machinery (excluding the cost and expenses of replacing or repairing the defective part).

Defendant had an Actual Cash Value ("ACV") Endorsement on the Policy. The ACV Endorsement modified the "PROPERTY COVERAGE" section as follows:

**PROPERTY COVERAGE** is amended as follows:

1. Coverage, a. Hull Coverage (Including Tenders), Item i. Coverage is deleted in its entirety and replaced with the following:

    i. Coverage

    We shall pay for sudden accidental direct physical loss or damage to the insured yacht unless:

    1) the property is described under Property Not Covered in Item ii;

    2) the cause of the loss is described under Exclusions in item iii; or

    3) the insured yacht is over 25 years of age, in which case, coverage for underwater machinery (running gear of any kind), engine(s), transmission(s), generators, and any attached equipment to these components must be caused by or resulting from the Named Perils listed below.

    The Named Perils are:

    a) collision;
    b) lightning;
    c) sinking;
    d) fire; [and]
    e) theft.

    Age, as used in this provision, is calculated by subtracting the model year

from the calendar year, and adding one (1) to the result.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. ANALYSIS

**A.     Plaintiff's Motion to Strike Defendant's Affidavit**

In support of his motion for partial summary judgment, Defendant submitted an affidavit that averred, among other things, that Plaintiff had caused the Camelot to be inspected after July 12, 2009, but prior to the sinking of the Camelot in November 2009, as the result of a lightning strike. Defendant averred that:

> 2.   Since acquiring ownership of the Camelot, I have made regular inspections and properly maintained that vessel in a safe and seaworthy condition.
>
> 3.   Whenever I observed or became aware of any part or item on the Camelot which required repair or replacement, I took the action necessary either personally or by retaining appropriately trained personnel to do so.
>
> 4.   During my ownership of the Camelot, I made sure that all necessary and/or required maintenance was performed in a timely and appropriate manner.
>
> \* \* \* \* \*
>
> 9.   After suffering a lightening [sic] strike on July 12, 2009, the Camelot was thoroughly inspected, including all through-hull fittings, by a marine surveyor retained by [Plaintiff].
>
> 10.   Following the inspection of the Camelot as mentioned above, no

> problems were reported to me regarding the raw water intake hose at issue, nor was I advised to repair, replace or even closely observe that hose for potential failure by [Plaintiff]'s retained marine surveyor or anyone else.
>
> 11. Based on my education and experience as a yacht owner and operator, it is my belief that the bilge pump system operated properly to keep the Camelot afloat following the failure of the raw water intake hose but the Camelot's ultimate sinking occurred because the batteries simply could not continue operating the bilge pump system [because they] became depleted[,] thus allowing the continuing flow of water through the burst hose to capsize the yacht.

Plaintiff contends the affidavit must be struck because many of the factual assertions are for the purpose of supporting Defendant's contention that Plaintiff is estopped from relying on the Policy exclusions. Plaintiff further contends that Defendant's failure to plead estoppel defense as an affirmative defense, as required by Federal Rule of Civil Procedure 8(c), bars Defendant's attempts to raise an estoppel argument now. Plaintiff also contends that not all of Defendant's representations are based on personal knowledge or are accurate. Specifically, Plaintiff contends that: (a) Defendant is not competent to testify regarding the scope of the thoroughness of the inspection by the marine surveyor after the Camelot was struck by lightning in July 2009, and (b) Defendant is wrong regarding the scope of the marine surveyor's inspection.

Despite Plaintiff's contentions, the Court finds no basis to strike Defendant's affidavit. First, the Court concludes that Defendant's estoppel defense is not barred by Defendant's admitted failure to plead estoppel as an affirmative defense. As Defendant argues, in certain circumstances, a court may determine that a defense is sufficiently pled if it is pled in a counter-complaint. *See* Fed.R.Civ.P. 8(c)(2). Rule 8(c) provides, in relevant part:

> (c) Affirmative Defenses.
>
> > (1) *In General.* In responding to a pleading, a party must affirmatively

>state any avoidance or affirmative defense, including: . . . estoppel[.]
>
>(2) *Mistaken Designation.* If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

In order for the Court to treat a mistakenly designated counterclaim as an affirmative defense, the Court must find that Defendant has set forth factual support for the elements of an estoppel claim, namely that:

(1) there be conduct or language amounting to a representation of material fact,

(2) the party to be estopped must be aware of the true facts,

(3) the party to be estopped must intend that the representation be acted upon - or the party asserting estoppel must reasonably believe that the party to be estopped so intends,

(4) the party asserting the estoppel must be unaware of the true facts, and

(5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428-29 (6th Cir. 2006) (citation omitted). Although Defendant does not use the word "estoppel" in his pleading, the Court finds that Defendant's assertion that Plaintiff "engaged in one or more unfair or deceptive acts or practices in breach of the implied terms of the [P]olicy," together with the other allegations in Defendant's counter-complaint, sufficiently sets forth a defense of estoppel, and the Court shall treat the pleading as though it were correctly designated as an affirmative defense.

Second, many of the averments in the affidavit do not relate to the averments to which Plaintiff has objected, and Plaintiff has not asked the Court to strike only certain portions of the affidavit. Third, although Plaintiff's argument and the affidavit of C. Robert Skord, Jr. ("Skord")

attached to Plaintiff's motion to strike constitute evidence that: (a) the factual assertions in the affidavit are false, and/or (b) Defendant is not competent to opine regarding the marine surveyor's inspection, such argument and affidavit do not establish either of those contentions, as a matter of law. In other words, Plaintiff's argument and Skord's affidavit simply establish that there is a genuine dispute regarding the factual assertions set forth in Defendant's affidavit.

Accordingly, the Court denies Plaintiff's motion to strike Defendant's affidavit in support of Defendant's motion for partial summary judgment.

**B.     Dispositive Motions**

The parties agree that the ACV Endorsement governs the loss coverage in this matter, and the Court also concludes that it does. For purposes of this Opinion, the key ACV Endorsement language is limited to the "Coverage" provision therein:

> i. Coverage
>
> We shall pay for sudden accidental direct physical loss or damage to the insured yacht unless:
>
> 1) the property is described under Property Not Covered in Item ii;
>
> 2) the cause of the loss is described under Exclusions in item iii; or
>
> 3) the insured yacht is over 25 years of age, in which case, coverage for underwater machinery (running gear of any kind), engine(s), transmission(s), generators, and any attached equipment to these components must be caused by or resulting from the Named Perils listed below.
>
> The Named Perils are: . . . c) sinking; . . .

The Court finds that the language in the "Coverage" provision of the ACV Endorsement is unambiguous–Plaintiff must pay for damage to the Camelot unless **any one** of the three listed exceptions applies. The Court's conclusion is based on simple contract construction–where the

clauses are separated by "or," only one clause need apply. *See generally*, *Security Ins. Co. of Hartford v. Tucker*, 64 F.3d 1001, 1006-07 (6th Cir. 1995); *General Casualty Co. of Wisc. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 577 n.4 (Minn. 2009) ("since all of the advertising-injury definitions are phrased in the disjunctive, only one provision of the definitions needs to cover an allegation to trigger General Casualty's duty to defend").

Moreover, the Court is not persuaded by Defendant's contention that the Policy language is ambiguous because the parties disagree which "exception" to "Coverage" applies. As Defendant notes, Plaintiff argues that the Exclusion exception applies, whereas Defendant argues that the 25 years/sinking exception applies. Contrary to Defendant's interpretation, the exceptions do not create obligations by which Plaintiff must pay for damage to an insured yacht or <u>create</u> an avenue by which Defendant is entitled to payment. Rather, the exceptions constitute **limitations** on Plaintiff's obligation to pay for damage to an insured yacht (or, with respect to part "3)," a limitation on the amount of coverage to be paid). In other words, the "Coverage" portion of the ACV Endorsement that relates to a yacht that is over 25 years of age (*i.e.*, the exception under part "3)") means that coverage for "underwater machinery (running gear of any kind), engine(s), transmission(s), generators, and any attached equipment to these components" will be paid on such a yacht <u>only if</u> one of the Named Perils (*e.g.*, sinking) is the cause of the damage. If the cause of the damage to such a 25 year old yacht is not caused by one of the Named Perils, however, there would be no coverage for such equipment.

The Court now considers whether there are any material facts that are not in genuine dispute such that either party can prevail on summary judgment.

*1. Plaintiff's Contention that Plaintiff's Coverage Barred by Two Exclusions*

11

Plaintiff argues that it is entitled to summary judgment because the cause of the loss on the Camelot comes within the "Exclusions" to "Coverage." Plaintiff argues that: (a) the cause of the loss regarding the sinking of the Camelot is attributable to two of the Exclusions described in item iii (*i.e.*, "wear and tear, gradual deterioration and corrosion" and "Defendant's failure to maintain the vessel in good condition"), and (b) the facts to support both such Exclusions are undisputed.

In this case, it is undisputed that Roden, the marine surveyor retained to investigate the cause of the sinking of the Camelot, determined that the Camelot sank due to ingress of water through a failed raw water intake hose - a hose Roden concluded showed evidence of wear and tear and deterioration. It is also undisputed that Taylor, the engineer retained to examine the hose, determined that a large change in hardness values had occurred with the hose (indicating age and deterioration), as well as corrosion from chloride exposure, with deterioration accelerated at the region of failure. Likewise, it is undisputed that Defendant admitted that he had never inspected or replaced the raw water intake hose. Such facts, however, do not <u>establish</u> that the sinking was due to "wear and tear and deterioration" or "Defendant's failure to maintain the vessel in good condition." Rather, when there is material evidence to the contrary, such facts only <u>constitute evidence</u> that the cause of the Camelot's sinking was due to "wear and tear and deterioration" or "failure to maintain the vessel in good condition."

In this case, Defendant has submitted admissible evidence that contradicts each of the three facts set forth by Plaintiff. For example, in his affidavit, Defendant averred that:

    (1)    He regularly inspected and properly maintained the Camelot,

    (2)    He caused any item he observed or learned needed repair or replacement to be repaired or replaced (whether personally or hiring someone appropriate to do so),

> (3) He ensured that all necessary and/or required maintenance was performed in a timely and appropriate manner,
>
> (4) Defendant observed a Plaintiff representative conduct a thorough inspection of the Camelot only months before the Camelot sank, and
>
> (5) Following that inspection, Defendant was not advised of any problem with the raw water intake hose at issue, nor was he instructed to replace, repair or pay attention to that hose.

In addition, Defendant has submitted an exhibit that includes a compilation of his costs associated with maintaining the Camelot. That exhibit reflects that Defendant incurred expenses of approximately $65,000 for the Camelot between March 2006 and the time the Camelot sank. Such evidence creates a genuine dispute as to whether either of the two Exclusions on which Plaintiff relies (*i.e.*, "wear and tear, gradual deterioration and corrosion" and "failure to maintain the vessel in good condition") apply. Accordingly, Plaintiff's motion for summary judgment must be denied.

### 2. *Defendant's Arguments for Summary Judgment*

Defendant sets forth four arguments why he is entitled to judgment as a matter of law on liability. Defendant first argues that, because the Policy language unambiguously provides that if the insured yacht is more than 25 years old and sank–both of which are undisputedly true with respect to the Camelot–Defendant is entitled to coverage. Specifically, Defendant asserts that the relevant ACV Endorsement language governing his claim is the following language:

> i. Coverage
>
> We shall pay for sudden accidental direct physical loss or damage to the insured yacht unless:
>
> \* \* \* \* \*
>
> 3) the insured yacht is over 25 years of age, in which case, coverage . . . must be caused by or resulting from . . .

\* \* \* \* \*

  c) sinking; . . .

As discussed above, this interpretation of the ACV Endorsement language is incomplete and erroneous. Likewise, Defendant's interpretation ignores the unambiguous language of the Policy and ACV Endorsement language.

  Defendant next argues that ambiguities in the Policy must be interpreted in his favor such that he is entitled to coverage under the Policy. Defendant contends that the Policy is ambiguous because the Coverage language in the ACV Endorsement provision is subject to more than one meaning. Again, as discussed above, the Coverage language is unambiguous and Defendant's interpretation of the Coverage provision of the ACV Endorsement is unsupportable.

  Defendant's third argument is that Plaintiff is estopped from asserting that the claim is subject to the Exclusions provisions because Plaintiff caused the Camelot to be inspected after lightning struck the Camelot in July 2009. As discussed above, the Court concludes that Plaintiff has the right to pursue this defense. Defendant asserts that the scope of the inspection conducted by Skord was thorough ("including all through-hull fittings"), but Skord avers otherwise in his affidavit. Specifically, Skord avers that: (1) he did not thoroughly inspect the Camelot, (2) his inspection did not include "any hoses as they are not normally subject to lightning strike damage," and (3) he did not make any comment to Defendant regarding the condition of the raw water intake hose. As such, the Court concludes there is a genuine dispute as to several material facts necessary to finding that Plaintiff is estopped from denying Defendant's claim on the basis of the two Exclusions cited by Plaintiff. Accordingly, the Court must conclude that Defendant is not entitled to summary judgment on his estoppel claim.

Finally, Defendant's argument that Plaintiff is required to pay for losses resulting from the sinking of the Camelot, less the cost associated with repair of the raw water intake hose, under the ACV Endorsement is also misplaced. In support of this argument, Defendant contends that a provision of the ACV Endorsement "makes it clear that the sinking of the Camelot is covered, except for the cost of repairing the hose" because "the raw water intake hose was damaged and that damage was not repaired before the Camelot sank." Defendant's position is unsupportable and illogical. Most significantly, the ACV Endorsement provision on which Defendant relies to support his argument relates to the Policy provisions regarding "Loss Conditions," not the Policy provisions regarding "Coverage." Therefore, in order for the Court to adopt Defendant's position, the Court would have to ignore the plain and unambiguous language of the Policy (namely the ACV Endorsement language related to "Coverage") that addresses losses covered by preexisting unrepaired damage.

The Court also would have to defy a logical interpretation of the Policy to reach that conclusion. In fact, the Court would have to:

   (1)   determine, as a matter of law, that the explicit exclusion(s) to coverage for Defendant's claim (wear and tear, deterioration and corrosion and/or failure to maintain the insured yacht in good condition) is/are inapplicable, and

   (2)   conclude instead that, as a matter of law, the wear and tear, deterioration and corrosion and/or the failure to maintain the insured yacht in good condition actually support a finding that Defendant's claimed loss *vis a vis* the Camelot (less the cost of repairing the raw water intake hose) is covered.

For the reasons discussed above, the Court will not adopt such an interpretation of the Policy, including the terms of the ACV Endorsement.

   *3. Conclusion*

For the reasons set forth above, the Court concludes that there are genuine disputes as to material facts that preclude granting summary judgment to Plaintiff or partial summary judgment to Defendant.

## V.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that:

    A.    Defendant's Motion for Partial Summary Judgment (Docket #26) is DENIED.

    B.    Plaintiff's Motion to Strike Affidavit of Defendant Lorn H. Olsen (Docket #30) is DENIED.

    C.    Plaintiff's Motion for Summary Judgment (Docket #31) is DENIED.

IT IS FURTHER ORDERED that counsel for the parties appear for a Final Pre-trial Conference on June 14, 2012, at 10:30 A.M., 526 Water Street, Port Huron, MI.  All counsel must be present, as well as the clients and/or those with full settlement authority.  The proposed joint final pretrial order, along with joint-agreed upon jury instructions, shall be submitted to the Judge's Chambers at the Final Pretrial/Settlement Conference.  If necessary, the case will be scheduled for a trial date at the conference.

IT IS SO ORDERED.

                                                    S/Lawrence P. Zatkoff
                                                    LAWRENCE P. ZATKOFF
                                                    UNITED STATES DISTRICT JUDGE

Dated: March 29, 2012

## CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 29, 2012.

                                                    S/Marie E. Verlinde
                                                    Case Manager
                                                    (810) 984-3290